# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00590-SCT

*STATE OF MISSISSIPPI*

*v.*

*LASH DEON ROGERS*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/15/2002 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | G. GILMORE MARTIN |
| ATTORNEY FOR APPELLEE: | KEVIN JEROME PAYNE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | PRESENTED QUESTIONS ANSWERED - 6/12/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE McRAE, P.J., DIAZ AND CARLSON, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1.    On March 13, 2002, a jury found Lash Deon Rogers not guilty of the sale of cocaine. At the trial, the State presented the testimony of Jeff Crevitt, a Warren County Sheriff's deputy specializing in narcotics investigations, Randy Lewis, another Sheriff's deputy, Jason Finch, a former Warren County Jailer and eyewitness to the alleged crime, Pete Deckard, a confidential informant, and Sharon Patton, Mississippi Crime Lab employee. Rogers and his brother, Lamont Rogers, testified in defense that no illegal transaction took place.

¶2. In jury selection, the court overruled a **Batson** objection by the State against Rogers for the exclusion of persons of the majority Caucasian race by use of defense peremptory challenges.

¶3. Furthermore, in considering jury instructions, the court granted instruction D-4 over the objections of the State. The instruction was objected to by the State as being a two-theory instruction only to be used in circumstantial evidence cases.

¶4. Following the jury's acquittal of Rogers, the State appeals pursuant to Miss. Code Ann. § 99-35-103(b)

[1](Rev. 2000) and asks this Court to determine:

> I. **WHETHER THE TRIAL COURT ERRED IN OVERRULING THE STATE'S *BATSON* OBJECTION TO THE EXERCISE OF THE PEREMPTORY CHALLENGES BY THE DEFENDANT.**
> II. **WHETHER THE TRIAL COURT ERRED IN GRANTING INSTRUCTION D-4.**

¶5. Our opinion does not affect Rogers in this particular case.

## FACTS

¶6. On July 27, 2000, members of the Warren County Sheriff's Office conducted an undercover buy of cocaine from Lash Deon Rogers (Rogers). The confidential informant, Pete Deckard (Deckard), was accompanied by undercover Warren County Jailer Jason Finch (Finch).

---

[1] Miss. Code Ann. § 99-35-103(b) states in pertinent part:
The state or any municipal corporation may prosecute an appeal from a judgment of the circuit court in a criminal cause in the following cases:
....
(b) From a judgment actually acquitting the defendant where a question of law has been decided adversely to the state or municipality; but in such case the appeal shall not subject the defendant to further prosecution, nor shall the judgment of acquittal be reversed, but the Supreme Court shall nevertheless decide the question of law presented.
....

¶7.     Deckard and Finch went to a house occupied by Rogers located on Pearl Street in Vicksburg, Mississippi. Using $40.00 in officially issued funds, Deckard allegedly bought two rocks of cocaine from Rogers. This was witnessed by Finch. The transaction was monitored by Crevitt over the body wire worn by Deckard.

¶8.     After the alleged sale had been completed, Officer Crevitt stopped Rogers driving away from the area in a brown Nissan automobile. Rogers stated that "he did not sell cocaine to that jailer." The official buy money was not recovered from Rogers or his automobile.

¶9.     A Warren County Jury was selected on March 12, 2002 to hear the case. Voir dire was conducted by the court, the State, and Roger's attorney. All parties retired to chambers to select the jury. After the State used its six peremptory challenges a panel of twelve was tendered to Rogers. Rogers made a *Batson* objection. The court found that the jury panel as tendered to Rogers was composed of seven African Americans and five Caucasians. The court ruled that a prima facie case had been made by Rogers and required the State to give race neutral reasons for the six peremptory challenges. The court sustained the *Batson* objection as to juror 49, Brenda Johnson, an African American female and juror 4, Pamela Dotson, also an African American female.

¶10.    Rogers then reviewed the tendered panel of twelve and exercised two peremptory challenges against two Caucasian female jurors. These jurors were juror 20, Longmire, and juror 44, Farrar. The State made a *Batson* objection. The court after discussion refused to recognize the *Batson* objection by the State as to race, further finding no prima facie case as to sex.

¶11.    The selection of the jury continued with Rogers using peremptory challenges against juror 52, Kleinman and juror 60, McCaskill, both Caucasian. The State renewed the *Batson* objection based upon race of the persons challenged by the defendant. Again the court ruled that the State's *Batson* objection

3

was without legal precedent and was overruled. Of the seven Caucasian veniremen tendered to Rogers, four were excused by Rogers. All peremptory challenges exercised by Rogers were used against Caucasians.

¶12. After the testimony of all witnesses, the trial judge and the parties retired to chambers to consider jury instructions. One of the instructions tendered by the defendant was D-4. The State objected to the instruction stating that it was in essence a "two theory" instruction only used in circumstantial evidence cases. The court granted the instruction over the objection of the State.

## DISCUSSION

¶13. For questions of law, our standard of review is de novo. *Smith v. Dorsey,* 599 So.2d 529, 533 (Miss.1992). Thus, we sit in the same position as did the trial court. *Franklin v. Franklin ex rel. Phillips*, 2003 WL 327708, 3 (Miss. 2003). On appeal, we will not disturb a circuit court's findings of fact unless those findings are manifestly wrong or clearly erroneous.

### I. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE STATE'S *BATSON* OBJECTION TO THE EXERCISE OF THE PEREMPTORY CHALLENGES BY THE DEFENDANT.

¶14. The State argues that the trial court incorrectly overruled its *Batson* objection and did not afford it an opportunity to provide authority to support a *Batson* objection. The State raised a *Batson* motion when Rogers exercised four (4) peremptory challenges excluding four Caucasian jurors. All of Rogers's peremptory challenges were made against Caucasian jurors, and out of the seven total Caucasians on the jury venire, four were challenged by Rogers.

¶15. Rogers contends that, although the State's assertion that *Batson* has been expanded by the Supreme Court to the use of peremptory challenges by the defendant is correct, the State did not meet the

requirement of a prima facie case of race discrimination which would then have shifted the burden of providing a race-neutral explanation for the challenge to Rogers.

¶16. "Where the State has challenged a defendant's peremptory strikes on the basis of race, regardless of whether the struck jurors were black or white, the court should use the same *Batson* analysis." *McFarland v. State*, 707 So.2d 166, 171 (Miss. 1997). While *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct.1712, 90 L. Ed. 2d 69 (1986), has predominately been a tool to deter discrimination against African Americans or other minorities, this is not the purpose of the ruling. The purpose is to afford a fair and impartial trial to defendants regardless of their race. The trial court should have allowed the State to make a *Batson* objection and gone forward with the analysis of whether the *Batson* objection was warranted.

¶17. *Batson* requires that when prosecutors exercise peremptory challenges against members of a distinct racial group, the State must articulate racially neutral reasons for doing so. The United States Supreme Court held in *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), that *Batson* applies to both prosecutors and defendants. This Court has stated:

> Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the same--in all cases, the juror is subjected to open and public racial discrimination.... We therefore reaffirm today that the exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party.

*Griffin v. State,* 610 So.2d 354, 356 (Miss. 1992).

¶18. This clearly establishes the right of the State to make a *Batson* objection. Once this is done, the objection should then be analyzed according to *Batson*. *McFarland v. State,* 707 So.2d 166, 171 (Miss. 1997), states this procedure with ample clarity.

5

Under **Batson**, the party objecting to the peremptory challenge must first make a *prima facie* showing that race was the criteria for the exercise of the peremptory strike. 476 U.S. at 96-97, 106 S.Ct. at 1723;*Stewart v. State*, 662 So.2d 552, 557 (Miss.1995). The burden then shifts to the party exercising the challenge to offer a race-neutral explanation for striking the potential juror. **Batson**, 476 U.S. at 97-98, 106 S.Ct. at 1723- 24; **Stewart**, 662 So.2d at 558. Finally, the trial court must determine whether the objecting party has met its burden to prove that there has been purposeful discrimination in the exercise of the peremptory. **Batson**, 476 U.S. at 98, 106 S.Ct. at 1724; **Stewart**, 662 So.2d at 558.

¶19. In light of these authorities, we conclude that the trial court erred in not allowing the **Batson** objection to be presented by the State.

## II.   WHETHER THE TRIAL COURT ERRED IN GRANTING INSTRUCTION D-4.

¶20. Along with others, instruction D-4 was given to the jury over the objection of the State. Instruction D-4 reads as follows:

In arriving at your verdict in this case you must not indulge in suspicion, speculation, conjecture or guesswork.  You can only act upon the testimony and evidence introduced before you upon the witness stand. Where there is a controverted issue of material fact, and the testimony and evidence fails to show beyond a reasonable doubt that the State's contention in regard to that issue of material fact is true, then you must find that fact in favor of Lash Deon Rogers.

¶21. The State contends that this instruction is equivalent to the two-theory instruction commonly given in a circumstantial evidence case and that this particular case was not a circumstantial evidence case. The two-theory instruction commonly given in circumstantial evidence cases states:

The Court instructs the jury that if there may be a fact or circumstance in this cause susceptible of two interpretations, one favorable and the other unfavorable to [Defendant], when the jury has considered such fact or circumstance with all other evidence, there is a reasonable doubt as to the correct interpretation, then you, the jury, must resolve such doubt in favor

6

of [Defendant], and place upon such fact or circumstance the interpretation most favorable to [Defendant].

*Parker v. State*, 606 So.2d 1132, 1140 (Miss. 1992). This instruction is the so-called "two-theory instruction" which we have said should be granted only in a case based entirely upon circumstantial evidence. *Kitchens v. State,* 300 So.2d 922, 926 (Miss. 1974) (citing *Coward v. State,* 223 Miss. 538, 78 So.2d 605 (1955)). It is only in entirely circumstantial evidence cases that such an instruction is required. *Barnes v. State,* 532 So.2d 1231, 1235 (Miss. 1988); *Boches v. State,* 506 So.2d 254, 260 (Miss. 1987); *Clark v. State,* 503 So.2d 277, 278-79 (Miss. 1987); *Keys v. State,* 478 So.2d 266, 267 (Miss. 1985); *Henderson v. State,*
453 So.2d 708, 709-10 (Miss. 1984); *Johnson v. State,* 347 So.2d 358, 360 (Miss. 1977).

¶22.    *Keys v. State,* 478 So.2d 266, 268 (Miss. 1985) discusses the difference between circumstantial and direct evidence, as follows:

> What is "circumstantial evidence"? The least inadequate definition we can provide is that circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist. Conversely, eye witness testimony is thought of as direct evidence.

A circumstantial evidence case (for the purposes of granting a "two-theory" instruction) is one in which there is neither an eyewitness nor a confession to the crime. *Mangum v. State,* 762 So.2d 337, 344 (Miss. 2000) (citing *Stringfellow v. State,* 595 So.2d 1320, 1322 (Miss. 1992)). *See also Randolph v. State,* --- So.2d ----, 2002 WL 31619070, *17 (Miss. 2002) (Carlson, J., concurring).

¶23.    Here, two witnesses for the State stated that they saw the drug sale. Two witnesses for Rogers claimed it did not happen. Thus, the case at hand is clearly based on direct, not circumstantial, evidence; and therefore, the two-theory instruction should not be given.

¶24. This presents the question of whether the instruction given is equivalent to the two-theory instruction. The State goes to great lengths to compare the two instructions and establish their semblance. The State points out that D-4 says "controverted issue of material fact" and the two-theory instruction says "fact or circumstance... susceptible of two interpretations." D-4 goes on to say where "evidence fails to show beyond a reasonable doubt that the State's contention in regard to that issue of material fact is true" while the two theory instruction says where "there is a reasonable doubt as to the correct interpretation." D-4 states "you [the jury] must find that fact in favor of [defendant]." The two-theory instruction says "you, the jury, must resolve such doubt in favor of [defendant] and place upon such fact or circumstance the interpretation most favorable to [defendant]."

¶25. In contrast, Rogers argues that the two instructions do appear to be alike, but the D-4 instruction fails to include the last sentence which states, "to the exclusion of every reasonable hypothesis consistent with innocence," and is therefore not an instruction of circumstantial evidence at all. This argument is flawed. The point that Rogers overlooks is that the sentence he argues was left out and therefore precludes any error by the trial court is no part of a two-theory instruction. In *Montgomery v. State,* 515 So.2d 845, 849 (Miss. 1987), we stated that "[i]n the ordinary criminal prosecution, the State must prove each element of the offense beyond a reasonable doubt. In circumstantial evidence cases, however, we say that the State must prove the defendant guilty beyond a reasonable doubt and to the exclusion of all reasonable hypotheses consistent with innocence." *Jones v. State,* 797 So.2d 922, 928-29 (Miss. 2001), clarifies this point by stating "the trial court in this case did grant the typical circumstantial evidence instruction. However, in addition to giving instruction on circumstantial evidence, the trial court must grant a "two-theory" instruction...."

¶26.  Rogers's argument focuses on D-4's failure to include all the elements of a circumstantial evidence instruction. However, this is not what the State is asserting. The State asserts that D-4 is identical to a two-theory instruction also given in circumstantial evidence cases, a totally separate instruction from the circumstantial evidence instruction [2]. Although two separate instructions, the rules for when they are appropriately given apply to both. This Court has held that the circumstantial evidence instruction has no place in direct evidence cases. The instruction *should not be given* where guilt does not rest entirely on circumstantial evidence, *Montgomery v. State*, 515 So.2d 845, 850 (Miss. 1987); *Harmon v. State,* 453 So.2d 710, 712 (Miss. 1984); *Bullock v. State*, 391 So.2d 601, 606 (Miss. 1980); *Weathers v. State,* 237 So.2d 441, 443 (Miss. 1970); *Coward v. State,* 223 Miss. 538, 78 So.2d 605, 610 (1955); *Yarbrough v. State*, 202 Miss. 820, 32 So.2d 436, 440 (1947).

¶27.  In light of these facts and authorities, we conclude that the instruction given was equivalent to a two-theory instruction and, therefore, should not have been given in this case since it was a direct evidence case.

## CONCLUSION

---

[2]It is the law in this State that, where the evidence for the prosecution is wholly circumstantial in nature, the accused is entitled upon request to have the jury instructed that, before they may convict, they must find that each element of the offense has been established beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. *Billot v. State,* 454 So.2d 445, 461-62 (Miss. 1984). "A correct statement is that the instruction must be given only where the prosecution is without a confession and wholly without eyewitnesses to the gravamen of the offense charaged." *Keys v. State*, 478 So.2d 266, 267 (Miss. 1985).

¶28.    The trial court erred by not allowing the State make a ***Batson*** objection based on discriminatory peremptory challenges. A ***Batson*** objection is the same regardless of the race of the challenged juror. Additionally, since this case was based on direct evidence, the trial court further erred when it presented the jury with Instruction D-4, an instruction which is used only for circumstantial evidence cases.

¶29.    Under Miss. Code Ann. § 99-35-103(b), the judgment of acquittal cannot be reversed, but this Court decides the questions presented for the future guide of the courts and other interested persons when the same questions shall arise again. The State is taxed with the costs of the appeal. ***State v. Heard,*** 246 Miss. 774, 787, 151 So.2d 417, 423 (1963).

¶30.    **PRESENTED QUESTIONS ANSWERED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, EASLEY AND CARLSON, JJ., CONCUR. GRAVES, J., SPECIALLY CONCURS WITHOUT SEPARATE WRITTEN OPINION.**